IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN P. MCGOUGH,

                Plaintiff,

v.

WELLS FARGO BANK, N.A., et al.,

                Defendants.

NO. C12-0050 TEH

ORDER ON MOTION TO DISMISS

This matter comes before the Court on motions to dismiss filed by Defendants Wells Fargo Bank, OneWest Bank, U.S. Bank, and Meridian Foreclosure Services, heard by this Court on June 11, 2012. For the reasons set forth below, the motion is hereby GRANTED IN PART and DENIED IN PART. An accompanying motion to expunge lis pendens by Defendant OneWest Bank is DENIED WITHOUT PREJUDICE, and Defendant Meridian's motion for a more definite statement is DENIED AS MOOT.

**BACKGROUND**

Plaintiff John P. McGough ("McGough" or "Plaintiff") borrowed $960,000 from First Federal Bank of California ("First Federal") on August 28, 2006. The loan was secured by a deed of trust on Plaintiff's property in Danville, California. Originally, the beneficiary under the deed of trust was First Federal, and the trustee was Seaside Financial Corporation. The complaint alleges that at some point, this loan was securitized, with the note not being properly transferred to U.S. Bank, whom Plaintiff alleges was the trustee for the securitized trust.

First Federal was closed by the Office of Thrift Supervision on December 18, 2009, and the Federal Deposit Insurance Corporation ("FDIC") was named receiver. The FDIC, in its role as receiver, assigned its interest in the note and deed of trust to OneWest bank on

March 29, 2010, recording the assignment on April 28, 2010. A notice of default was recorded on October 20, 2010, by Meridian Foreclosure Service ("Meridian"). Meridian was substituted for Seaside as trustee on January 24, 2011, the same day a notice of trustee's sale was received by the Contra Costa County Recorder's Office (though the notice was signed two days prior, on January 22nd, 2011, it was not recorded until the day of substitution). The property was sold on February 14 of that year at a trustee's sale.

Following the trustee's sale, on February 23, 2011, Defendants Miah Callahan and J. Rost Realty ("Callahan" and "J. Rost") approached Plaintiff with a "cash for keys" agreement, in which Plaintiff would agree to vacate the apartment by March 4, 2011, in exchange for a payment of $8,000. Plaintiff was given a copy of the contract to review, in which there was no term releasing the banks or realtors from liability. However, when Plaintiff arrived on March 4 to sign the contract and move out, he claims he was presented with a contract that had replaced the last term prior to the signature line with a release of liability. Defendants do not dispute this, but assert that Plaintiff should have read the contract he signed more carefully, and claim he was given time to do so. Plaintiff did sign the contract, and received an $8,000 check, which he has not cashed to date.

Plaintiff makes twelve claims against Defendants, six of which are at issue in these motions to dismiss (the remaining fraud, constructive fraud, fraud by concealment of material facts, fraud by intentional misrepresentation, breach of implied covenant of good faith and fair dealing and breach of fiduciary duty claims are made only against Callahan and J. Rost, who have not answered the complaint nor filed a motion to dismiss). The claims at issue here are those made against Wells Fargo Bank, ("Wells Fargo"), OneWest Bank ("OneWest"), U.S. Bank, and Meridian, for lack of standing, breach of contract, violation of the truth in lending act, violation of California's unfair business practices law (California Business and Professions Code section 17200 et seq.) and penal code sections 115 and 532(f)(a)(4), intentional infliction of emotional distress and equitable estoppel.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). Courts are not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, – U.S. –, 129 S. Ct. 1937, 1949-50 (2009). Rather, it "will examine whether conclusory allegations follow from the description of facts as alleged." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir.1992) (citation omitted). Dismissal for failure to state a claim under Rule 12(b)(6) "is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.2008).

Under Federal Rule of Civil Procedure 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 129 S. Ct. at 1949. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). For claims of fraud, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, claims sounding in fraud must allege "the account of the time, place and specific content of the false representations as well as the identities of the parties to the

1  misrepresentations." *Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007). This
2  heightened pleading requirement does not apply to a defendant's mental state: knowledge and
3  intent need only be alleged generally to state a valid claim for fraud. *See* Fed. R. Civ. Pro.
4  9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged
5  generally.")

6      Leave to amend, under Federal Rule of Civil Procedure 15(a)(2), should be given
7  "freely...when justice so requires," as "the underlying purpose of Rule 15 [is] to facilitate
8  decision on the merits, rather than on the pleadings or technicalities." *Lopez v. Smith*, 203
9  F.3d 1122, 1127, 1140 (9th Cir. 2000) (internal quotation marks and alterations omitted).
10 Even where "no request to amend the pleading was made," a court should grant leave to
11 amend "unless it determines that the pleading could not possibly be cured by the allegation of
12 other facts." *Id.* at 1127 (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)).
13 Generally, the only circumstances under which leave to amend should be denied are where
14 amendment would unduly prejudice the opposing party, where amendment would cause
15 undue delay or be futile, or if the moving party has acted in bad faith. *Leadsinger, Inc. v.*
16 *BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

17     In ruling on a motion to dismiss, the Court "may generally consider only allegations
18 contained in the pleadings, exhibits attached to the complaint, and matters properly subject to
19 judicial notice." *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 899 (9th Cir.
20 2007) (citation and quotation marks omitted). The court may consider judicially noticeable
21 court records to determine the preclusive effect of prior decisions without converting a
22 motion to dismiss to a motion for summary judgment. *See, e.g., Shaw v. Hahn*, 56 F.3d 1128
23 at 1129 n.1 (9th Cir. 1995).

**DISCUSSION**

*1. Claims Against Wells Fargo*

Wells Fargo, in their motion to dismiss, notes that they are referenced individually only once in the 40 pages of the complaint, in paragraph 16, where Plaintiff asserts on information and belief that Wells Fargo is the purported servicer of the mortgage. In making this assertion, Plaintiff references Exhibit A, the note secured by the deed of trust in this case, and Exhibit B, the notice of default sent to Plaintiff by Meridian foreclosure. However, none of these documents make reference to Wells Fargo, and Wells Fargo, in its motion, denies presently being, or ever having been, the servicer of the mortgage in this case.

Though Plaintiff's opposition to Wells Fargo's motion to dismiss (untimely filed six days after the filing deadline) re-asserts Plaintiff's belief that Wells Fargo is somehow involved in Plaintiff's mortgage loan, again referencing exhibits A and B, Plaintiff does not seem to be able to clearly identify when Wells Fargo would have been involved in the mortgage or loan securitization, what the nature of that involvement was, or how that involvement is a basis for any of the causes of action alleged. Therefore, the complaint clearly lacks specificity sufficient to "give the defendant fair notice of what the ... claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 570. Accordingly, all claims against Wells Fargo are DISMISSED. However, out of an abundance of caution, the Court dismisses these claims with LEAVE TO AMEND.

In granting leave to amend, the Court strongly cautions Plaintiff that any abuse of this leave is grounds for sanctions under Federal Rule of Civil Procedure 11(c). Plaintiff is directed to review Federal Rule of Civil Procedure 11(b), and ensure that any further filing is in compliance with the strictures of this rule.

*2. Claims Against U.S. Bank*

U.S. Bank shares counsel with OneWest Bank, and the two Defendants have filed a single motion to dismiss. However, the grounds for dismissal asserted by U.S. Bank are largely the same as those asserted by Wells Fargo–that U.S. Bank's role in the conduct alleged in the complaint is not specified and that, in fact, U.S. Bank had no role in either Plaintiff's loan or subsequent foreclosure.

Plaintiff alleges, in paragraph 18 of the complaint, that U.S. Bank "is the purported Trustee for the Trust and/or a purported participant in the imperfect securitization of the Note and/or the Deed of Trust dated August 28, 2006...". However, Plaintiff offers no documentation of this, or specific allegations as to the role of U.S. Bank beyond one further mention, in paragraph 31 of the complaint, in which Plaintiff alleges that U.S. Bank was the "Trustee for the Securitized Trust."

As discussed above with regards to the claims against Wells Fargo, the complaint lacks sufficient specificity in its allegations against U.S. Bank. It does not clearly allege how U.S. Bank–specifically, not as a member of a group of defendants, but as an individual entity–was involved in the conduct underlying Plaintiff's claims, or even what the wrongful conduct of U.S. Bank might have been. Therefore, as in the case of Wells Fargo, all claims are DISMISSED as to Defendant U.S. Bank, with LEAVE TO AMEND. As above, Plaintiff is strongly cautioned to adhere to the requirements of Rule 11 in re-filing any amended complaint.

*3. Claims Relating To Securitization And Violations Of The PSA–Against All Defendants*

Several of Plaintiff's claims are based on a theory that securitization of the loan invalidated any interest the defendants had in the property. Specifically, Plaintiff's "Lack of Standing" claim, breach of contract claim, and equitable estoppel claims rely on an argument that securitization abrogates Defendants' power of sale.

Theories that securitization undermines the lender's right to foreclose on a property have been rejected by the courts. *See e.g. Sami v. Wells Fargo Bank, et al.*, No. 12-00108,

2012 WL 967051 at *4-*6 (N.D. Cal. March 21, 2012) (rejecting arguments that securitization invalidates standing to foreclose and finding borrower has no standing to challenge violations of the terms of a Pooling and Service Agreement ("PSA") as improper securitization); *Wadhwa v. Aurora Loan Servs., LLC*, No. 11-1784, 2011 WL 2681483 at *4 (E.D. Cal. July 8, 2011) (rejecting argument that securitization, and assignment of the note to a REMIC invalidates interests other than the borrower's); *Hafiz v. Greenpoint Mortgage Funding, Inc.*, 652 F.Supp.2d 1039, 1043 (N.D. Cal. 2009) (rejecting argument that defendants' power of sale is lost by assignment of original promissory note to a trust pool); *Benham v. Aurora Loan Servs.*, No. 09-2059, 2009 WL 2880232, at *3 (N.D. Cal. Sept. 1, 2009) (rejecting same argument regarding trust pool); *Reyes v. GMAC Mortgage LLC*, No. 11-0100, 2011 WL 1322775, at *2 (D. Nev. Apr. 5, 2011) ("securitization of a loan does not in fact alter or affect the legal beneficiary's standing to enforce the deed of trust"); *see also Lane v. Vitek Real Estate Indus. Group*, 713 F.Supp.2d 1092, 1099 (E.D. Cal. 2010) (noting that "[t]here is no stated requirement in California's non-judicial foreclosure scheme that requires a beneficial interest in the Note to foreclose. Rather, the statute broadly allows a trustee, mortgagee, beneficiary, or any of their agents to initiate non-judicial foreclosure"). Clearly, proper securitization does not give rise to a cause of action in California, and the party initiating the non-judicial foreclosure proceedings need not be in possession of the promissory note.

Here, however, the complaint alleges improper securitization, arguing that the Pooling and Service Agreement ("PSA") governing the securitized trust was violated and that, therefore, the note was never properly securitized and Defendants are not properly the beneficiaries of the securitized trust, nor have any enforceable rights as to the property. Defendants respond to this allegation by arguing that Plaintiff lacks standing to challenge any violations of the PSA. Indeed, where a plaintiff is not an investor in the PSA, courts have held that the plaintiff has no standing to challenge violations of the PSA's terms. *See, e.g., Sami,* 2012 WL 967051 at *6 (finding no standing to challenge the PSA where plaintiff alleged defendant's enforceable rights to the property abrogated by improper securitization);

7

*Junger v. Bank of America*, No. 11-10419, 2012 WL 603262 at *3 (C.D. Cal. Feb. 24, 2012) (finding that the fact that plaintiff was not a party to the PSA undermined any standing plaintiff might have to challenge the PSA); *In re Correia*, 452 B.R. 319, 324 (1st Cir. 2012) (holding that debtors, as non-parties to the PSA, lack standing to challenge mortgage agreement where challenge is based on non-compliance with a PSA); *Bascos v. Fed. Home Loan Morg. Corp.*, No. 11-3968, 2011 WL 3157063 at *6 (C.D. Cal. July 22, 2011) (plaintiff "has no standing to challenge the validity of the securitization of the loan as he is not an investor of the loan trust."). *But see Wise v. Wells Fargo Bank, N.A., et al.*, No. 11-8586, 2012 WL 1058887 at *3 (C.D. Cal. Mar. 23, 2012) (court denied defendants' motion to dismiss plaintiff's request for declaratory judgment where the "fairly unique set of facts" alleged by plaintiff–involving fabricated documents, as well as timely loan payments up until a denial of loan modification, followed by default–and plaintiff's own admission that the loan would have been legitimately securitized had the defendants followed the terms of the PSA differentiated the case from the ordinary securitization allegations).

Plaintiff has not sufficiently demonstrated why the circumstances of this case give Plaintiff standing to sue for violations of the PSA's terms. Having no proper basis for these claims arising from either securitization of the mortgage or from improper securitization of the mortgage, Plaintiff's claims for lack of standing and equitable estoppel are DISMISSED WITH PREJUDICE.

*4. Plaintiff's Second Cause of Action: Breach of Contract*

A complaint for breach of contract must allege (1) the existence of a contract between plaintiff and defendant, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) damages to plaintiff therefrom. *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal.App.3d 887, 913 (1971). Presently, the complaint seeks to allege breach of contract by claiming that securitization constituted an improper transfer of the note separate from its security instrument. However, Defendant OneWest points out that the note itself

8

provides that it may be transferred, and, furthermore, as discussed above, securitization is not a valid basis for bringing this cause of action.

This cause of action fails for lack of specificity. The specific term of the contract barring such transfer of the note is not alleged, nor is Plaintiff's performance or excuse for nonperformance. The problems inherent in basing this claim on securitization have been discussed above, however, as it appears that there may exist a term in Plaintiff's own contract which could have been violated by Defendants' transfer of the note, the standing problems discussed above do not necessarily bar this cause of action entirely.

The Court will DISMISS WITH LEAVE TO AMEND, in order that the Plaintiff might have an opportunity to amend the complaint so as to specifically allege each of the required elements of a breach of contract claim–specifying the contract and term that were violated, addressing Plaintiff's own performance or nonperformance, detailing which defendant breached the contract and in what way the contract was breached, and then specifically alleging damages.

*5. Plaintiff's Third Cause of Action: Violation of TILA*

The third cause of action alleges violation of the federal Truth in Lending Act ("TILA"), 15 U.S.C. section 1641(g), which Defendants move to dismiss on the grounds that Plaintiff exceeded the applicable one-year statute of limitations. The complaint alleges that on April 28, 2010, OneWest was assigned the deed of trust by the FDIC, acting in its capacity as receiver fro First Federal. Plaintiff alleges that OneWest failed to notify plaintiff within the 30 days after the assignment, as required by 15 U.S.C. section 1641(g). There is a one-year statute of limitations for violations of this statute. *See* 15 U.S.C. section 1640(e); *Kelley v. Mortgage Electronic Registration Systems, Inc.*, 642 F.Supp.2d 1048, 1059 (N.D. Cal. 2009).

Defendants point out that the violation alleged here would have been apparent May 28, 2010, and therefore is barred by the statute of limitations, as the complaint was not filed until January 4, 2012. Plaintiff responds by asking the Court to apply equitable tolling,

9

1  pointing out that where, "despite all due diligence, a plaintiff is unable to obtain vital
2  information bearing on the existence of his claim", equitable tolling applies. *See Holmberg v.*
3  *Armbrecht*, 327 U.S. 392, 397, 66 S.Ct. 582, 90 L.Ed. 743 (1946).

4  "If a reasonable plaintiff would not have known of the existence of a possible claim
5  within the limitations period, then equitable tolling will serve to extend the statute of
6  limitations for filing until the plaintiff can gather what information he needs." *Santa Maria v.*
7  *Pacific Bell*, 202 F.3d 1170, 1178 (9th Cir. 2000). Plaintiff quotes from recent case law
8  holding that "[a] motion to dismiss based on the running of a statute of limitations may be
9  raised 'where the running of the statute is apparent from the face of the complaint, and the
10 motion should be granted only if the assertions of the complaint, read with the required
11 liberality, would not permit the plaintiff to prove that the statute was tolled.'" *Yang v. Home*
12 *Loan Funding, Inc.*, No. 07-1454, 2010 WL 670958 at *5 (E.D. Cal. Feb. 18, 2010) (citing
13 *Plascencia v. Lending 1st Mortgage*, 583 F.Supp.2d 1090, 1097 (N.D.Cal.2008) (internal
14 quotations omitted)).

15 However, in *Yang*, the inability of the plaintiff to discover the violation was distinctly
16 more clear–there, violative terms had been imposed upon the loan, and the plaintiff had no
17 way of discovering those terms (non disclosure of the terms being an element of the
18 violation) until the wrongful terms were imposed. *Id.* Here, however, the face of the
19 complaint makes it clear that the notice of default, received in October of 2010, should have
20 revealed the violation, as OneWest's status as beneficiary was revealed by the notice.

21 Furthermore, Plaintiff acknowledges having made payments to OneWest, which calls
22 into question Plaintiff's inability to discover the violation. For these reasons, this cause of
23 action must be DISMISSED. However, the Court grants LEAVE TO AMEND, to allow the
24 Plaintiff an opportunity to amend the complaint so that, on its face, if read with the required
25 liberality, the facts alleged enable Plaintiff to show tolling is proper.

*6. Plaintiff's Fourth Cause of Action: Cal. Bus. & Prof. C. Section 17200 et seq.*

California Business and Professions Code section 17200, *et seq.*, known as the unfair competition law ("UCL"), prohibits business practices which are "unlawful, unfair or fraudulent". In order to state a claim under the unlawful prong, a plaintiff must allege facts that show that any of a defendant's business practices–or conduct which can be characterized as a business practice–violates the law, meaning any civil or criminal, federal, state or municipal, statutory, regulatory, or court-made law. *California v. McKale*, 25 Cal.3d 626, 632 (1979), *Saunders v. Superior Court*, (1994) 27 Cal.App.4th 832, 838-39. Conduct is "fraudulent" if it is likely to deceive any member of the public. *Weinstat v. Dentsply Int'l., Inc.*, 180 Cal.App.4th 1213, 103 Cal.Rptr.3d 614, 622 n.8 (Ct.App. 2010).

Whether a business practice is "unfair" is determined by one of several tests, but this Court has always applied the "Section 5 Test", from Section 5 of the Federal Trade Commission Act, which requires an analysis of whether (i) there exists substantial consumer injury, (ii) the injury is not outweighed by countervailing benefits to consumers or competition, and (iii) the injury was not reasonably avoidable by the consumer. *Camacho v. Auto. Club of So. Cal.*, 142 Cal. App. 4th 1294, 1403 (Cal. Ct. App. 2006).

As this portion of the complaint sounds in fraud, it is held to the higher pleading requirements of Rule 9(b). Claims sounding in fraud may not be pled with allegations against a group of undifferentiated defendants; rather, the complaint must identify each specific defendant's alleged misconduct. *Swartz v. KMPG LLG*, 476 F.3d 756, 764-65 (9th Cir. 2007). While allegations made upon information and belief must generally state a factual basis for that belief, "the general rule that allegations of fraud based on information and belief do not satisfy Rule 9(b) may be relaxed with respect to matters within the opposing party's knowledge. In such situations, plaintiffs can not be expected to have personal knowledge of the relevant facts." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993) (citing *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir.1987); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir.1989); *DiVittorio v. Equidyne Extractive Industries, Inc.*, 822 F.2d 1242, 1247–48 (2d Cir.1987)).

11

1   Here, however, even under the relaxed standard offered by *Neubronner*, the failure to
2   differentiate the conduct of the individual defendants is fatal.  The complaint makes many
3   specific allegations about the mortgage industry generally, and makes quite specific
4   allegations regarding some individuals involved in paragraph 94 of the complaint. However,
5   without linking these specifics to the conduct of OneWest and Meridian (and even Wells
6   Fargo or U.S. Bank, if such a link can be made) the complaint fails to meet the requirements
7   of Rule 9(b).

8   Plaintiff's representations at oral argument, however, give the Court reason to believe
9   Plaintiff has the capacity to amend this cause of action so as to set forth a viable claim.
10  Therefore, the claim is DISMISSED WITH LEAVE TO AMEND, that the Plaintiff might be
11  afforded an opportunity to amend the cause of action to include the level of detail and
12  specificity required by Rule 9(b).

14  *7. Plaintiff's Fifth Cause of Action: Intentional Infliction of Emotional Distress*

15  In order to bring a claim for intentional infliction of emotional distress ("IIED"), a
16  plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention
17  of causing, or reckless disregard of the probability of causing, emotional distress; (2) the
18  plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate
19  causation of the emotional distress by the defendant's outrageous conduct.  Conduct to be
20  outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized
21  community." *Quinteros v. Aurora Loan Services*, 740 F.Supp.2d 1163, 1172 (E.D. Cal.
22  2010).

23  Here, the allegation is that Defendant's misrepresentations to Plaintiff regarding their
24  right to foreclose on the property were sufficient to rise to the standard set forth
25  above–specifically, that the conduct was in reckless disregard of the probability of causing
26  emotional distress inherent in foreclosing on a person's home.  Though assertions of
27  economic interest in good faith are privileged (*see Girard v. Ball*, 125 Cal.App.3d 772, 786-
28  787 (Cal.App. 1981)) this complaint clearly alleges conduct in bad faith, with reckless

12

disregard for Plaintiff's potential emotional distress, as well as alleging a causative connection between the conduct involved and the effects of the distress, including lack of sleep, anxiety, depression, lack of appetite, and loss of productivity at work. The complaint therefore properly sets forth a claim for intentional infliction of emotional distress, and the motions to dismiss this cause of action are DENIED.

*8. Issues Specific To Defendant Meridian*

Plaintiff's First, Fourth, Fifth and Twelfth claims for relief are brought against Meridian, the foreclosure servicing company acting as a trustee in this case. Because much of the wrongdoing in the complaint is alleged against the banks involved, and because Meridian, being a foreclosure servicing company, must necessarily have played a somewhat different role than the other defendants to this complaint, it is difficult to discern from the complaint what conduct, in particular, is being alleged as to Meridian.

Meridian makes arguments against the individual causes of action which are functionally identical to those addressed above, but further requests, at the conclusion of its motion to dismiss, that the Court at least require Plaintiff to make a more definite statement regarding his claims against Meridian. As the causes of action in question have been dismissed, and leave to amend granted largely to allow Plaintiff an opportunity to revise his allegations so as to cure the lack of specificity and detail which is fatal in this complaint, there is no need to further require a more definite statement, and therefore this motion is DENIED AS MOOT.

Additionally, Meridian invokes California Civil Code section 2924, which limits the liability of a foreclosing trustee for acts taken in furtherance of its duty as a foreclosing agent during a nonjudicial foreclosure. However, Plaintiff correctly responds that liability is not so limited to protect trustees from "malicious" communications. A "showing that the defendant lacked reasonable grounds for belief in the truth of the publication and therefore acted in reckless disregard of the plaintiff's rights" is sufficient for a showing of malice. *Kachlon v. Markowitz*, 168 Cal.App.4th 316, 336 (Cal.App. 2008). Here, the allegation is, in fact, one

13

1 of malice in the form of reckless disregard–that the defendant knowingly foreclosed knowing
2 they had no right to do so. Therefore, the privilege afforded by California Civil Code section
3 2924 does not apply to the actions alleged in this case.

*9. Motion To Expunge Lis Pendens (By Defendant OneWest)*

Federal courts look to the law of the state where the property resides in matters concerning lis pendens. *See* 28 U.S.C.1964. California law provides, "[a] party to an action who asserts a real property claim may record a notice of pendency of action in which that real property claim is alleged." Cal. Civ. Proc. Code § 405.20. In opposition to a motion to expunge, the party who recorded the notice of lis pendens has the burden of proof. *Id*. § 405.30. In order to carry the burden, the recording party must demonstrate that "the pleading on which the notice is based does ... contain a real property claim" and establish "by a preponderance of the evidence the probable validity of the real property claim." *Id*. §§ 405.31, 405.32. A real property claim is defined as a claim in a pleading "which would, if meritorious, affect (a) title to, or the right to possession of, specific real property." *Id*. § 405.4. Probable validity "means that it is more likely than not that the claimant will obtain a judgment against the defendant on the claim." *Id*. § 405.3.

In Plaintiff's opposition to the motion to expunge lis pendens, Plaintiff merely directs the Court's attention to the portions of the complaint which would constitute a real property claim, and does not present any evidence in support of the probable validity of any claim. In light of the dismissals with leave to amend granted above, however, it would be inequitable to expunge the lis pendens while allowing the Plaintiff an opportunity to amend the defects in the complaint.

Generally, where courts have granted motions to expunge lis pendens, they have done so where a complaint was dismissed without leave to amend; where leave to amend has been granted, motions to expunge lis pendens have been denied without prejudice, allowing the moving party to re-file if the amendment fails to cure the defects in the complaint. *See*

14

*Meneses v. CitiMortgage, Inc.*, No. 11-5227, 2012 WL 1428908 at *3 (N.D.Cal. Apr. 24, 2012). Therefore, the motion to expunge lis pendens is DENIED WITHOUT PREJUDICE.

*10. Remaining Issues Regarding Defendants Callahan And J. Rost Realty*

The Court notes that at this time, there has been no response to the complaint from Miah Callahan or J. Rost Realty, two of the named defendants and the only two defendants named in the sixth through eleventh causes of action. A review of the docket reveals that summonses issued to Callahan and J. Rost Realty on March 5, 2012 were returned unexecuted on May 1, 2012, as it appears Plaintiff has the incorrect contact information for these individuals. Plaintiff has had a more than ample span of time in which to perform the simple research required to locate correct contact information for these individuals, and therefore the Court ORDERS Plaintiff to perfect service on these defendants within 30 days of the issuance of this Order. If Plaintiff fails to do so, the claims against those defendants will be dismissed for failure to prosecute.

**CONCLUSION**

For the reasons set forth above, Plaintiff's first and twelfth causes of action are DISMISSED WITH PREJUDICE. Plaintiff's second, third and fourth causes of action are DISMISSED WITH LEAVE TO AMEND. The motions to dismiss Plaintiff's fifth cause of action are DENIED. Defendant Meridian's motion for a more definite statement is DENIED AS MOOT, and Defendant OneWest's motion to expunge lis pendens is DENIED WITHOUT PREJUDICE. Plaintiff is ORDERED to perfect service on the remaining defendants Miah Callahan and J. Rost Realty **within 30 days of the issuance of this order**.

**IT IS SO ORDERED.**

Dated: 6/18/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT