IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN P. MCGOUGH,

           Plaintiff,

v.

WELLS FARGO BANK, N.A., et al.,

           Defendants.

NO. C12-0050 TEH

ORDER GRANTING MOTIONS TO DISMISS, GRANTING MOTION TO EXPUNGE LIS PENDENS, AND DISMISSING CASE

This matter comes before the Court on Motions to Dismiss Plaintiff's Second Amended Complaint filed by Defendants Wells Fargo Bank (Docket No. 85), Meridian Foreclosure Services (Docket No. 89), OneWest Bank and U.S. Bank (jointly in Docket No. 83), and Defendant OneWest Bank's Motion to Expunge Lis Pendens (Docket No. 82). For the reasons set forth below, the motions to dismiss and to expunge the lis pendens are hereby GRANTED. Plaintiff's causes of action against named but unserved defendants Miah Callahan and J. Rost Royalty are DISMISSED for failure to prosecute, pursuant to the Court's June 18, 2012 Order (Docket No. 74).

**BACKGROUND**

On August 28, 2006, Plaintiff John P. McGough ("McGough" or "Plaintiff") borrowed $960,000 from First Federal Bank of California ("First Federal"). The loan was secured by a Deed of Trust encumbering Plaintiff's property, located at 400 Fairview Street in Danville, California 94506 (the "Property"). SAC ¶¶ 29, 30, Ex. A. The original Beneficiary (lender) under the Deed of Trust was First Federal. SAC ¶ 30, Ex. A. The original Trustee was Seaside Financial Corporation ("Seaside"). SAC ¶ 30, Ex. A. Plaintiff alleges on information and belief that at some point in time, "this loan was securitized, with

1 the Note not being properly transferred to Defendant, U.S. Bank, acting as the Trustee for the
2 Securitized Trust." SAC ¶ 31.

3       First Federal was closed by the Office of Thrift Supervision on December 18, 2009,
4 and the Federal Deposit Insurance Corporation ("FDIC") was named receiver. The FDIC, in
5 its role as receiver, assigned and transferred the Deed of Trust to OneWest Bank, FSB
6 ("OneWest") in March, 2010, recording the assignment on April 28, 2010. SAC ¶ 29, Ex. D.
7 A Notice of Default was recorded on October 20, 2010 by Meridian Foreclosure Service
8 ("Meridian"). SAC ¶ 29, Ex. B. Meridian was subsequently substituted for Seaside as
9 Trustee on January 24, 2011, the same day a Notice of Trustee's sale was received by the
10 Contra Costa County Recorder's Office. SAC ¶ 29, Ex. C. The property was sold at a
11 Trustee's Sale and a Trustee's Deed Upon Sale was recorded on February 22, 2011. SAC ¶
12 29, Ex. E.

13       On or about February 23, 2011, Defendants Miah Callahan and J. Rost Realty
14 ("Callahan" and "J. Rost") approached Plaintiff with a "cash for keys" agreement, by which
15 Plaintiff would agree to vacate the apartment by March 4, 2011, in exchange for a payment
16 of $8,000. SAC ¶ 53. Plaintiff alleges irregularities in conjunction with the ensuing
17 transaction, although the Court need not address these in light of Plaintiff's failure to
18 prosecute the claims. *See* SAC ¶¶ 53-66; Order at 2, 15.

19       The Court heard motions to dismiss Plaintiff's First Amended Complaint ("FAC") on
20 June 11, 2012. In a June 18, 2012 Order ("Order" or "June Order") (Docket No. 74), the
21 Court dismissed with prejudice all claims arising out of improprieties related to the alleged
22 pooling and/or securitization of the loan. Order at 6-8. The Court dismissed with leave to
23 amend the following claims: Plaintiff's breach of contract claim against OneWest Bank
24 ("OneWest"), in order to allow Plaintiff to properly plead such a claim, *id.* at 8-9; Plaintiff's
25 Truth in Lending Act ("TILA") claim against OneWest in order to allow Plaintiff to properly
26 allege facts supporting the equitable tolling of his otherwise time-barred claim, *id.* at 9-10;
27 and Plaintiff's Unfair Competition Law ("UCL" or "section 17200") claim against all
28 Defendants, in order to allow Plaintiff to properly plead such claims, *id.* at 11-12. The Court

2

denied Defendants' motions to dismiss Plaintiff's Intentional Infliction of Emotional Distress ("IIED") claims. *Id.* at 12-13. The Court stressed that it allowed leave to amend several of the claims "out of an abundance of caution" and that Plaintiff should heed the dictates of Fed. R. Civ. P. 11 in any further filings. *See* Order at 5, 6.

In light of the allegations pleaded in Plaintiff's Second Amended Complaint ("SAC") and the current case law on the issues presented, the Court grants Defendants' motions, finding that Plaintiff is unable to state any viable claim stemming from the circumstances surrounding the foreclosure of his home. At most, he alleges that Meridian had not been properly substituted as Trustee at the time that it recorded a Notice of Default against him. *See* SAC ¶ 52; *see also* Opp'n to Meridian's Mot. to Dismiss at 3-5. Plaintiff's claims on this basis are unavailing, given that the law at the time of the conduct permitted such a procedure. Claims stemming from the alleged securitization of his loan have already been dismissed. June Order at 6-8.

In light of Plaintiff's failure to serve Defendants Miah Callahan and J. Rost, the Court now dismisses all claims against them for failure to prosecute.

**LEGAL STANDARD**

Dismissal is appropriate under Federal Rule of Civil Procedure 12(b)(6) when a plaintiff's allegations fail "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Dismissal can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990). Leave to amend should generally be given except in cases of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [or] futility of amendment." *Leadsinger, Inc. v. BMG Music Publ'g*, 512 F.3d 522, 532 (9th Cir. 2008).

Under Federal Rule of Civil Procedure 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "give the

3

defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007). Plausibility requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

In ruling on a motion to dismiss, the Court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. L.A. County*, 487 F.3d 1246, 1249 (9th Cir. 2007). A court is not, however, "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Rather, the court "will examine whether conclusory allegations follow from the description of facts as alleged." *Holden v. Hagopian*, 978 F.2d 1115, 1121 (9th Cir. 1992) (internal quotation marks omitted).

Claims sounding in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). For claims of fraud, a plaintiff "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). Allegations must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985) (citation omitted).

**DISCUSSION**

**1. Plaintiff's First Cause of Action for Breach of Contract – Against OneWest**

A complaint for breach of contract must allege (1) the existence of a contract between plaintiff and defendant, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom. *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971).

4

Plaintiff alleges that "OneWest breached the contract by enforcing and completing duties that legally could not be completed by them frustrating the purpose of the parties and vitiating the [Plaintiff's] benefit of the bargain." SAC ¶ 68. Further, he alleges that "When OneWest sent notices as to calculation of interest rates they in fact were breaching the contract as they are not a party that can act upon such and thus frustrating all parties' benefit of the bargain." *Id.*

It appears that Plaintiff is arguing that the loan either could not be transferred by First Federal, the original Beneficiary, to OneWest, or that OneWest did not legally obtain an interest in the loan. Yet the Note itself belies the former argument. The first paragraph of the Note says: "I understand that the lender may transfer this Note." SAC Ex. A. There is therefore nothing in the contract itself, originally between Plaintiff and First Federal, which would make the Note non-transferable. Second, as to whether the Note was actually and validly assigned to OneWest, Plaintiff himself attaches to his complaint the Corporate Assignment of Deed of Trust from the FDIC to OneWest, documenting the transfer of Plaintiff's Note. SAC Ex. D.

The heart of Plaintiff's argument seems to be that the transfer of his loan worked an unfairness. *See* SAC ¶ 70 ("OneWest Bank further breached the loan agreement by selling the Plaintiff's loan to third parties who are immune to defenses to foreclosure and other contractual rights and remedies that the Plaintiff may have had against the originator of the loan and would be able to seek redress from directly."). Whether or not this is true, the law of contract offers Plaintiff no remedy.

Accordingly, the Court hereby DISMISSES the contract claim against Defendant OneWest.

**2. Plaintiff's Second Cause of Action for Violation of TILA – Against OneWest**[1]

---

[1] The heading for the Second Cause of Action states that it is a claim "Against Defendant OneWest Bank." SAC at 21. This notwithstanding, Plaintiff intermittently inserts allegations against U.S. Bank. *See, e.g.*, SAC ¶¶ 82-84; *see also* "Plaintiff's Response to Defendants OneWest Bank and U.S. Bank's Motion to Dismiss" (Opp'n) at 4-5. However, because the TILA claim is pleaded as a claim against OneWest and the Court finds no basis in the facts alleged to support a TILA claim against U.S. Bank, the Court will treat the

5

1    Plaintiff's second cause of action alleges violations of Truth in Lending Act ("TILA")
2 section 131(g), codified at 15 U.S.C. § 1641(g). SAC ¶¶ 73-85. This subsection requires a
3 creditor who acquires a debt through transfer or assignment to notify the debtor of the
4 transfer within thirty days. 15 U.S.C. § 1641(g)(1). Plaintiff alleges that OneWest was
5 assigned the Deed of Trust on April 28, 2010, and that it failed to notify Plaintiff of the
6 transfer as required by the statute. SAC ¶¶ 75, 78-79.
7    The Court dismissed this claim on statute of limitations grounds in its June Order.
8 Order at 10; *see* 15 U.S.C. § 1640(e) (setting limitations period of one year from the date of
9 the violation); *Kelley v. Mortgage Elec. Registration Sys., Inc.*, 642 F. Supp. 2d 1048, 1059
10 (N.D. Cal. 2009). The Court granted leave to amend so that Plaintiff could allege facts
11 supporting equitable tolling. Order at 10. Plaintiff has failed to allege such facts.
12    The limitations period of section 1640(e) may be equitably tolled "until the borrower
13 discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the
14 basis of the TILA action." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986); *see also*
15 *Plascencia v. Lending 1st Mortg.,* 583 F. Supp. 2d 1090, 1097 (N.D. Cal. 2008); *Hubbard v.*
16 *Fidelity Fed. Bank*, 91 F.3d 75, 79 (9th Cir. 1996) (per curiam) (tolling did not apply where
17 "nothing prevented [the plaintiff] from comparing the loan contract, Fidelity's initial
18 disclosures, and TILA's statutory and regulatory requirements.").
19    Plaintiff argues that "The issue of equitable tolling must be considered when the
20 complaint, liberally construed in light of our notice pleading system, adequately alleges facts
21 showing the *potential* applicability of the equitable tolling doctrine." Opp'n at 4 (citing *Yang*
22 *v. Home Loan Funding, Inc.*, No. CV F 07–1454 AWI GSA, 2010 WL 670958, at *6 (E.D.
23 Cal. Feb. 22, 2010) (internal quotation marks omitted) (Plaintiff's emphasis)). However, the
24 SAC fails to allege facts showing any potential applicability of the equitable tolling doctrine
25 here. Even if Plaintiff did not find out about the assignment of the Deed of Trust on April
26 28, 2010, when it was conveyed by the FDIC to OneWest, the Notice of Default recorded on
27
28 Second Cause of Action for TILA violations as a claim against OneWest only.

6

October 21, 2010 clearly referred Plaintiff to "OneWest Bank FSB - C/O Meridian Foreclosure Service" "[t]o find out the amount [he] must pay, [or] to arrange for payment to stop this foreclosure . . . ." SAC Ex. B at 2. Plaintiff therefore would have been apprised that the loan had been transferred to OneWest at this time. Plaintiff has not alleged any facts to suggest otherwise. Yet even if we use the Notice of Default's October 21, 2010 date as the date by which a reasonable person would have discovered OneWest's ownership or interest in the loan, Plaintiff's January 4, 2012 Complaint is still untimely.

For these reasons, the Court DISMISSES the TILA claim against OneWest as time-barred.

### 3. Plaintiff's Third Cause of Action for Violations of California's Unfair Competition Law – Against All Defendants

California's Unfair Competition Law ("UCL" or "17200"), prohibits business practices which are unlawful, unfair or fraudulent. Cal. Bus. & Prof. C. § 17200. In order to state a claim under the "unlawful" prong, a plaintiff must demonstrate that the defendant's conduct or business practice violates a law or regulation. *California v. McKale*, 25 Cal. 3d 626, 632 (1979); *Saunders v. Superior Court*, 27 Cal. App. 4th 832, 838-39 (1994). Conduct is "fraudulent" if it is likely to deceive any member of the public. *Weinstat v. Dentsply Int'l, Inc.*, 180 Cal. App. 4th 1213, 1223 n.8 (2010). Claims sounding in fraud are subject to heightened pleading requirements and must identify each specific defendant's alleged misconduct. *See Swartz v. KMPG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007). Unfairness is determined by "weigh[ing] the utility of the defendant's conduct against the gravity of the harm to the alleged victim . . . . " *Wilson v. Hynek*, 207 Cal. App. 4th 999, 1008 (2012) (internal quotation marks omitted); *see also id.* (discussing split in California authority as to how broadly to interpret unfairness and whether "unfair" claims must be tethered to an established violation of law or policy).

Plaintiff's "Third Cause of Action" contains four separate sections alleging violations of section 17200. Each begins with the heading "Third Cause of Action: Violation of

1  Business & Professions Code § 17200 et seq. and California Penal Code § 115.5 & §
2  532(f)(a)(4) [Fraudulently Procured Documents]".[2] SAC at 25, 30, 31, 33 (bracketed
3  language in original). In the first of these, Plaintiff discusses general problems with
4  mortgage foreclosure industry and alleges that all of the defendants "fraudulently and
5  knowingly procured or offered false or fraudulently prepared documents to fabricate the
6  missing gaps in the chain of title or to falsely demonstrate compliance with the PSA [Pooling
7  and Servicing Agreement]." *Id.* ¶ 98.[3]

We address the section 17200 allegations against each defendant in turn.

A. *17200 Claim Against Meridian*

Against Defendant Meridian, the Trustee and foreclosing party, Plaintiff alleges:
"Meridian never had any interest in the loan and . . . yet. . . persisted in a foreclosure of Mr.
McGough's home" in violation of California Civil Code section 2924, and California Penal
Code sections 115.5 (filing forged documents with county recorder) and 532 (false
pretenses). SAC at 33 (heading) & ¶¶ 121, 123. In his opposition, Plaintiff clarifies that he
bases his claim against Meridian on the fact that it was not substituted as Trustee until *after* it
executed or recorded a Notice of Default against him. Opp'n at 5.

This seems best characterized as a claim under the "unlawful" prong, although
Plaintiff also alludes to fraud. *See, e.g.,* SAC ¶ 98 (alleging against all Defendants that they
allowed "false or fraudulently prepared documents" to be recorded in violation of California
Penal Code § 115.5). A claim of unlawfulness ordinarily fails if the underlying cause of
action, the predicate unlawful conduct, fails. *See, e.g.*, *Keen v. Amer. Home Mortg.
Servicing, Inc.*, No. CIV 2–09–01026 FCD/KJM, 2009 WL 3380454, at *12 (E.D. Cal. Oct.

---

[2] California Penal Code section 532 addresses false pretenses, but appears to contain no sub-section (f).

[3] Not only has this Court already dismissed claims arising out of the Pooling and Servicing Agreement, *see* June Order at 6-8, but the Court also dismissed Plaintiff's earlier-pleaded "Fourth Claim for Relief," to which the allegations now presented in the first sub-section of the "Third Claim for Relief," ¶¶ 86-107, bear a striking resemblance.

United States District Court
For the Northern District of California

21, 2009) (dismissing UCL claim once all other predicate claims were dismissed); *Clark v. Countrywide Home Loans, Inc.*, 732 F. Supp. 2d 1038, 1050 (E.D. Cal. 2010).

Here, California Civil Code section 2924 et seq., the statute Plaintiff cites as providing the basis for his claim, establishes procedures for nonjudicial foreclosure sales. Section 2924(a)(1) states: "[t]he trustee, mortgagee, or beneficiary, *or any of their authorized agents* shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default."[4] (emphasis added). Thus, the statute permits the recording of a notice of default by an authorized agent of the beneficiary. Here, all indications are that Meridian was authorized by OneWest and acted at OneWest's behest. *See* SAC Ex. C (Substitution of Trustee). The fact that the substitution was recorded *after* Meridian recorded the Notice of Default is not significant in this context. *See Wilson*, 207 Cal. App. 4th at 1009-1010 (rejecting as meritless a proposed amendment alleging that an agent of the beneficiary improperly recorded the notice of default, given that section 2924(a)(1) allowed any authorized agent to record the notice).

Furthermore, even were the substitution improper or unlawful, Plaintiff cannot show that it resulted in prejudice to him as the borrower because his default caused the foreclosure. *See Javaheri v. JPMorgan Chase Bank, N.A.*, No. 2:10–cv–08185–ODW (FFMx), 2012 WL 3426278, *6 (C.D. Cal. Aug. 13, 2012) (plaintiff lacked standing to challenge substitution of trustee, given that plaintiff had defaulted and "the foreclosure would occur regardless of what entity was named as trustee"); *In re Mortg. Elec. Registration Sys. (MERS) Litig.*, No. CV 10–1547–PHX–JAT, 2012 WL 932625, at *3 (D. Ariz. March 20, 2012) (slip op.) ("Plaintiffs, as third-party borrowers, are uninvolved and unaffected by the alleged [defective] Assignments, and do not possess standing to assert a claim based on such.") Here, Plaintiff does not contest that he defaulted on his loan. Nor does he contest that

---

[4] The Court notes that the California Homeowners Bill of Rights, enacted July 11, 2012, amends Civil Code section 2924 and adds subsection (a)(6), addressing substitution of a trustee. *See* Legislative Counsel's Digest to A.B. 278 (2012). However, the amendments do not go into effect until Jan. 1, 2013 and there is no indication that the law is intended to be, or will be, applied retroactively. *See id.* The parties addressed this issue in supplemental briefing to the Court on October 1, 2012 (Docket Nos. 107-109).

9

1  Meridian was substituted as trustee on January 24, 2011. SAC Ex. C. At most, he alleges
2  that Meridian was not on record as the trustee when it recorded his Notice of Default. Any
3  procedural improprieties notwithstanding, the default caused the loss of Plaintiff's home, not
4  the alleged procedural error. *See Daro v. Superior Court*, 151 Cal. App. 4th 1079, 1098
5  (2007) (standing exists under the UCL only where an injury has been sustained *as a result of*
6  the unfair competition).

7  Finding that further amendment of this claim would be futile, the Court hereby
8  DISMISSES the Third Cause of Action against Meridian.

9  B. *17200 Claim Against OneWest*

10  The only allegation specifically pleaded against Defendant OneWest is that "OneWest
11  Bank lacked authority to execute an assignment of the Deed of Trust from the original
12  beneficiary to Defendant."[5] SAC ¶ 99. OneWest "had knowledge that no such authority was
13  ever bestowed upon it by the original lender, First Federal Bank of California, yet OneWest
14  Bank still caused to be recorded [its purported interest in the loan]." *Id.* ¶ 100. Plaintiff
15  seems to be saying either that the Deed of Trust was legally non-transferrable or that it was
16  not, in fact, transferred to OneWest.

17  The latter proposition is foreclosed by the documents Plaintiff himself attaches to the
18  SAC, which show that the interest in the Deed of Trust *was* transferred, from First Federal to
19  the FDIC as receiver, and from the FDIC to OneWest. SAC Ex. D. And even if the transfer
20  were somehow improperly recorded, California courts have rejected claims that improper
21  recordation poses an obstacle to foreclosure. *See, e.g.*, *Javaheri*, 2012 WL 3426278 at \*5;
22  *Herrera v. Fed. Nat'l Mortg. Assn.*, 205 Cal. App. 4th 1495, 1506-07 (2012); *Fontenot v.*
23  *Wells Fargo Bank, N.A.*, 198 Cal. App. 4th 256, 271–72 (2011).

24  As to the proposition that the loan was somehow non-transferable, there is simply no
25  support in the law or in the facts of this case. To the contrary, the Promissory Note to

---

[5] Plaintiff may have meant to say that OneWest lacked the authority to *receive* (rather than *execute*) the assignment, as the Deed of Trust was conveyed to OneWest by the FDIC. *See* SAC ¶ 29, Ex. D.

10

1 Plaintiff's loan, secured by the Deed of Trust, stated in its opening paragraph that "the
2 Lender may transfer the Note." SAC Ex. A ¶ 1. Where allegations of wrongdoing are
3 directly contradicted by the terms of the Deed of Trust, there is no unfair business practice
4 claim. *Wilson*, 207 Cal. App. 4th at 1009-1010; *see also Fontenot,* 198 Cal. App. 4th at 272
5 ("Because a promissory note is a negotiable instrument, a borrower must anticipate it can and
6 might be transferred to another creditor.") .

7 In short, the Deed of Trust was validly transferred to OneWest and the transfer was
8 validly recorded. The Court finds no impropriety with regard to the assignment of Plaintiff's
9 loan to OneWest, thereby undercutting the validity of any claim under the UCL. The Court
10 therefore DISMISSES the claim.

11 C. *17200 Claim Against U.S. Bank*

12 Plaintiff alleges in the second sub-section of his Third Cause of Action that "U.S.
13 Bank through its omission of recordation of any purported interest in the subject loan it has
14 caused monetary damages and the loss of a home." SAC ¶ 109. Plaintiff appears to argue
15 that U.S. Bank was the Trustee for the GSR Mortgage Loan Trust 2006-9F, the trust into
16 which or through which Plaintiff thinks his loan passed, but that U.S. Bank failed to record
17 its interest in Plaintiff's Note by the time of the closing date of that pool of loans. *See id.* ¶
18 110. Plaintiff concludes: "U.S. Bank is sure to know that the practice of not claiming some
19 interest would make the borrower of the subject loan unable to meet any obligation that
20 might be owed." *Id.*

21 U.S. Bank states that it does not, and never had, any interest in the loan. U.S. Bank/
22 OneWest MTD at 9 (Docket No. 83); U.S. Bank/ OneWest Reply at 3 ("U.S. Bank does not
23 have, and never had, any interest in Plaintiff's loan"). The Court, after its best efforts at
24 deciphering the allegations in the Complaint, fails to find any logic to what Plaintiff is
25 saying. He seems to state that U.S. Bank held an interest in the loan and that it did not hold
26 an interest in the loan at the same time. *See* SAC ¶¶ 109-112. To the extent that the
27 complaint alleges that U.S. Bank was involved in the pooling and securitization of Plaintiff's
28

11

1  loan – of which there is no evidence – the Court dismissed any and all such claims with
2  prejudice in June. *See* June Order at 6-8.
3        Finding that further amendment of this claim would be futile, the Court DISMISSES
4  the 17200 claim against U.S. Bank.

      *D. 17200 Claim Against Wells Fargo*

6        Plaintiff makes almost identical allegations against Defendant Wells Fargo, stating
7  that "If U.S. Bank [sic], as Trustee for the GSR Mortgage Loan Trust 2006-9F purported to
8  have an interest in the Note, then this means that Wells Fargo should have declared its
9  position as assignee of the Note as well. Wells Fargo has never recorded any interest while
10 maintaining it had an interest in the subject loan through the corresponding Pooling and
11 Servicing Agreement" SAC ¶ 116. Again, Plaintiff pleads no facts explaining or supporting
12 this contention. Wells Fargo maintains that it "does not have an interest in the Deed of Trust
13 or Note." Wells Fargo MTD at 6.
14       The reasoning outlined above with regard to Defendant U.S. Bank applies with equal
15 force here. Accordingly, the Court DISMISSES the section 17200 claim against Wells
16 Fargo.

**4. Plaintiff's Fifth Cause of Action[6] for Intentional Infliction of Emotional Distress – Against All Defendants**

20       In order to bring a claim for intentional infliction of emotional distress ("IIED"), a
21 plaintiff must allege "(1) extreme and outrageous conduct by the defendant with the intention
22 of causing, or reckless disregard of the probability of causing, emotional distress; (2) the
23 plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate
24 causation of the emotional distress by the defendant's outrageous conduct. Conduct to be
25 outrageous must be so extreme as to exceed all bounds of that usually tolerated in a civilized

---

[6] There is no fourth cause of action in the SAC.

12

community." *Wilson*, 207 Cal. App. 4th at 1009 (internal quotation marks, brackets and citation omitted).

In its June Order, the Court allowed Plaintiff's IIED claim to go forward. Order at 13. However, after consideration of the facts pleaded in the Second Amended Complaint and the current case law, the Court now finds that Plaintiff fails to allege a cognizable claim of IIED.

As stated above, Plaintiff fails to allege any plausible involvement by Defendants U.S. Bank and Wells Fargo in his case. As to Defendant OneWest, Plaintiff alleges that it was illegal or improper for OneWest to have received an interest in his loan. However, as discussed above, Plaintiff's Note clearly indicated that it was transferable, and the documents Plaintiff attaches to his complaint show that the loan was legitimately transferred to OneWest. With regard to Defendant Meridian, Plaintiff alleges that Meridian recorded the Notice of Default against Plaintiff before it had been officially substituted as trustee. However, as discussed above, this was not unlawful, let alone outrageous. *Accord Wilson*, 207 Cal. App. 4th at 1009 (creditor's exercise of his/her rights under a loan agreement can not be considered "outrageous"); *Cervantes v. Countrywide Home Loans, Inc.*, 656 F.3d 1034, 1046 (9th Cir. 2011) (lender's conduct, "though arguably offensive if true, is not so outrageous as to go 'beyond all possible bounds of decency.'")

Having found above that Plaintiff fails to state a claim of unfair or unlawful conduct against any Defendant under the UCL, the Court now finds that Plaintiff cannot state a claim of IIED. Accordingly, the IIED claims against all Defendants are DISMISSED.

**5. Plaintiff's Remaining Causes of Action – Against Defendants Miah Callahan And J. Rost Realty**

In June, the Court ordered Plaintiff to serve these Defendants within thirty days or the Court would dismiss the claims for failure to prosecute. Order at 15. The docket reveals that these defendants have not been served. Therefore, the Court now DISMISSES Plaintiff's claims against Miah Callahan and J. Rost Realty for failure to prosecute.

**6. Defendant OneWest's Motion To Expunge Lis Pendens**

The recording of a Notice of Pendency of Action ("Lis Pendens") is governed in California by the Code of Civil Procedure sections 405.31 and 405.32. Section 405.32 provides that a court must "order that the notice be expunged if the court finds that the claimant has not established by a preponderance of the evidence the probable validity of the real property claim." Having found that there is no validity to Plaintiff's claim, the Court GRANTS the motion. The Notice of Pendency of Action recorded with the Contra Costa County Recorder Office on January 19, 2012 as Document No. 2012-0012937-00, concerning the property located at 400 Fairview Street, Danville, California 94506, APN 217-152-004 shall be EXPUNGED.

**CONCLUSION**

Plaintiff has failed to state a claim against any Defendant. The Court finds that further amendment of any of the claims would be futile and GRANTS Defendants' Motions to Dismiss in their entirety. Claims against Callahan and J. Rost Realty are DISMISSED for failure to prosecute. The Motion to Expunge the Lis Pendens is GRANTED. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: 10/22/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT