IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOHN P. MCGOUGH,

    Plaintiff,

v.

WELLS FARGO BANK, N.A., et al.,

    Defendants.

NO. C12-0050 TEH

ORDER VACATING HEARING, GRANTING IN PART AND DENYING IN PART MOTION FOR RULE 11 SANCTIONS

This matter comes before the Court on Defendants OneWest and U.S. Bank's Motion for Sanctions pursuant to Federal Rule of Civil Procedure 11.[1] Because the Court finds that a hearing is not necessary in this matter, the Court hereby VACATES the December 10, 2012 hearing. After careful consideration of the papers and record in this case, the Court finds that Plaintiff's counsel violated Rule 11 and imposes non-monetary sanctions.

**BACKGROUND**

The facts underlying this action appear in detail in both of the Court's prior substantive orders in this case (June Order, Docket No. 74 & October Order, Docket No. 111) and are addressed here only as relevant. Attached to Plaintiff's Second Amended Complaint ("SAC") (Docket No. 81), Plaintiff's attorney submitted documents showing the following uninterrupted chain of title to the interests in the loan that is the subject of these proceedings: In 2006, Plaintiff borrowed $960,000 from First Federal Bank of California, secured by a Deed of Trust encumbering Plaintiff's property. SAC ¶¶ 29, 30, Ex. A. The original Trustee under the Note was Seaside Financial Corporation. SAC ¶ 30, Ex. A. First

---

[1] Even though the case has been dismissed, the Court has jurisdiction to decide the motion for sanctions. *Greenberg v. Sala*, 822 F.2d 882, 885 (9th Cir. 1987).

1  Federal was closed by the Office of Thrift Supervision in 2009, and the Federal Deposit
2  Insurance Corporation was named receiver. The FDIC, in its role as receiver, assigned and
3  transferred the Deed of Trust to OneWest Bank, FSB ("OneWest") in 2010. SAC ¶ 29, Ex.
4  D. Meridian was subsequently substituted for Seaside as Trustee in 2011. SAC ¶ 29, Ex. C.
5  Plaintiff subsequently defaulted on his loan. Meridian recorded his default and his property
6  was eventually sold at a Trustee Sale in 2011. SAC Ex. B, D.

7        Plaintiff filed suit against four banks: OneWest, the bank that owned the loan and
8  instituted the foreclosure; Meridian, the servicer of the loan at the time of foreclosure; and
9  U.S. Bank and Wells Fargo bank, neither of which owned any interest in Plaintiff's loan at
10 any time. Yet, despite being told that Defendants U.S. Bank and Wells Fargo had no interest
11 in her client's loan, Plaintiff's attorney persisted in believing that the loan had, at some point,
12 been bundled into a particular trust with which those two banks were associated. The
13 mistaken belief seems to have come from a "Securitization Analysis Report" Plaintiff
14 obtained during the investigation. *See* Opp'n Ex. A. The report was produced by a company
15 called Certified Forensic Loan Auditors, LLC. *Id.* It traced the ownership of Plaintiff's loan
16 and reported that the loan had been securitized and pooled into a trust entitled the "GSR
17 Mortgage Loan Trust 2006-9F," for which U.S. Bank was listed as the trustee and non-
18 moving Defendant Wells Fargo as the servicer. Ex. A at 3. This Court dismissed any and all
19 claims arising out of the alleged securitization with prejudice in June, 2012. June Order at 8.

20       The SAC alleged claims against OneWest for: breach of contract (First Cause of
21 Action), violation of the Truth in Lending Act (Second Cause of Action), violation of
22 California's Unfair Competition Law ("UCL" or "§ 17200") (Third Cause of Action sub-part
23 1), and Intentional Infliction of Emotional Distress ("IIED") (Fifth Cause of Action).
24 Plaintiff alleged against U.S. Bank a claim under the UCL (Third Cause of Action sub-part 2)
25 and a claim of IIED. Moving Defendants U.S. Bank and OneWest now argue that the claims
26 in the SAC were factually baseless, were not warranted under existing law or a reasonable
27 argument for extending the law, were duplicative of claims previously dismissed by the
28 Court, and were brought for an improper purpose under Rule 11(b). Defendants ask this

2

court to award the payment of fees to them in the amount of $5,589 to cover the cost of responding to the SAC and bringing the present motion.

The Court agrees that several aspects of the SAC violated Rule 11. However, in light of Rule 11's focus on deterrence and the totality of the circumstances presented here, the Court finds that non-monetary sanctions are a more appropriate remedy in this case. Accordingly, the Court GRANTS Defendants' motion as to liability, and DENIES it as to the awarding of fees to Defendants.

**LEGAL STANDARD**

Rule 11(b) provides that:

> By presenting to the court a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
>
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
>
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery . . . .

Fed. R. Civ. P. 11(b).

Because a non-frivolous complaint "cannot be said to be filed for an improper purpose," a court evaluating a complaint under Rule 11 need only consider whether it was frivolous. *Greenberg v. Sala,* 822 F.2d 882, 885 (9th Cir. 1987) (citations omitted). A frivolous filing is "a pleading or other paper which no competent attorney could believe was well grounded in fact and warranted by law." *Id.*; *see also Golden Eagle Distrib. Corp. v. Burroughs Corp.*, 801 F.2d 1531, 1538 (9th Cir. 1986). "An attorney may not be sanctioned for a complaint that is not well-founded, so long as she conducted a reasonable inquiry." *In re Keegan Mgmt. Co., Sec. Litig.*, 78 F.3d 431, 434 (9th Cir. 1996).

3

In reviewing a complaint, the Court considers: "(1) whether the complaint is legally or factually baseless from an objective perspective, and (2) if the attorney has conducted a reasonable and competent inquiry before signing and filing it." *Christian v. Mattel, Inc.*, 286 F.3d 1118, 1127 (9th Cir. 2002) (internal quotation marks and citation omitted). The standards are objective and "intended to eliminate any 'empty-head pure-heart' justification for patently frivolous arguments." Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments.

**1. Claims against U.S. Bank**

"A complaint is factually frivolous if a competent attorney, after reasonable inquiry, could not form a reasonable belief that the complaint was well founded in fact." *Greenberg*, 822 F.2d at 887.  Here, contrary to the "Securitization Analysis Report," Plaintiff's loan was not part of the GSR Mortgage Loan Trust 2006-9F, in which U.S. Bank may have had an interest.  There is, therefore, no doubt that the claims against U.S. Bank were not well-founded in fact, for the simple reason that Plaintiff was suing an improper defendant.  The question under Rule 11, then, is whether counsel conducted a reasonable inquiry before continuing to sue U.S. Bank in her SAC.

"Tolerance of factual contentions in initial pleadings . . . does not relieve litigants from the obligation to conduct an appropriate investigation into the facts . . . . [I]f evidentiary support is not obtained after a reasonable opportunity for further investigation . . . , the party has a duty under the rule not to persist with that contention." Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments.  So here, counsel had a duty to retract from her position once it became clear that the Report was unfounded.  Instead, she persisted in asserting that U.S. Bank was somehow connected to her case, without explanation either to Defendants or to the Court.  The documents that Plaintiff submitted with the SAC showed an uninterrupted chain of title to the interests in Plaintiff's loan, a chain of title that did not include U.S. Bank or Wells Fargo.  Plaintiff's attorney filed a similar case in state court, three complaints in federal court, responded to two rounds of motions to dismiss, and received service of the

4

present motion for sanctions. At each stage, Defendants U.S. Bank and Wells Fargo pointed out that they had no interest in Plaintiff's loan and were included improperly in the lawsuit.

The Court finds that counsel's failure to stop and reckon with the evidence against her was not reasonable. This Court need not determine precisely the point at which it became unreasonable to continue to rely on the Securitization Report. Whenever that point was, counsel sailed past it. In so doing, she violated Rule 11.

**2. Claims against OneWest**

"A pleading or motion need not be frivolous as a whole to be sanctionable under Rule 11." *Senese v. Chicago Area I.B. of T. Pension Fund,* 237 F.3d 819, 826 n.3 (7th Cir. 2001). Examining the four claims brought against OneWest, the Court finds that the breach of contract claim violated Rule 11 and that the other three were within its confines.

*Claim for breach of contract.* A complaint for breach of contract must allege (1) the existence of a contract between plaintiff and defendant, (2) plaintiff's performance or excuse for non-performance, (3) defendant's breach, and (4) damage to plaintiff therefrom. *Acoustics, Inc. v. Trepte Constr. Co.*, 14 Cal. App. 3d 887, 913 (1971). The claim that Plaintiff alleged was extremely difficult to decipher and failed to allege these elements. *See, e.g.*, SAC ¶ 68 ("OneWest breached the contract by enforcing and completing duties that legally could not be completed by them frustrating the purpose of the parties and vitiating the [Plaintiff's] benefit of the bargain"; "When OneWest sent notices as to calculation of interest rates they in fact were breaching the contract as they are not a party that can act upon such and thus frustrating all parties' benefit of the bargain.").

Furthermore, this Court dismissed Plaintiff's contract claim in its June, 2012 Order with leave to amend to allege the required elements. Order (Docket No. 74) at 9. The SAC instead re-alleged the same claim, within the additional but non-sensical assertion that OneWest "breached every term regarding the Note Holder," SAC ¶ 68. This addition failed to cure the deficiency of the prior pleading. The claim presented no reasonable legal theory, either based on existing law or an argument for an extension thereof. Indeed, the attorney

5

failed to outline any line of logic that was internally consistent between the facts of the case and the relief she sought. The re-filing of the breach of contract claim violated Rule 11.

*Claim for violation of the TILA.* Plaintiff's claim under the TILA was dismissed as time-barred in June with leave to amend to allege facts supporting tolling. June Order at 10. The applicable limitations period may be equitably tolled "until the borrower discovers or had reasonable opportunity to discover the fraud or nondisclosures that form the basis of the TILA action." *King v. State of Cal.*, 784 F.2d 910, 915 (9th Cir. 1986). Plaintiff's attorney failed to add any facts which would suggest that her client did not discover or did not have the opportunity to discover the nondisclosures under TILA over which he was suing. Even if there were facts in her client's case that would have supported a claim for equitable tolling, counsel did not include them. However, because there arguably existed at least a logical basis for equitable tolling, based on Plaintiff's inability to bring his claim sooner because he did not know the identity of the new holder of his loan, *see* October Order at 5-7, the Court finds that the assertion in the SAC of the TILA claim was reasonably responsive to the legal framework and the facts of the case and therefore did not violate Rule 11.

*Claim for violation of the UCL.* Defendants fault Plaintiff's pleading for failing to differentiate the conduct of the individual defendants. Mtn. at 10. However, as to this claim, the Court finds that Plaintiff's attorney made an attempt to differentiate her allegations against the various defendants and to fit her client's claims within California's generous Unfair Competition Law.

Plaintiff's UCL claim against OneWest resembled the claim for breach of contract. Plaintiff alleged that "OneWest Bank lacked authority to execute an assignment of the Deed of Trust from the original beneficiary to Defendant."[2] SAC ¶ 99. OneWest "had knowledge that no such authority was ever bestowed upon it by the original lender, First Federal Bank of California, yet OneWest Bank still caused to be recorded [its purported interest in the loan]." *Id.* ¶ 100. The essential charge is that the assignment worked an unfairness. While the Court

---

[2] Counsel may have meant to say that OneWest lacked the authority to *receive* (rather than *execute*) the assignment, as the Deed of Trust was conveyed to OneWest by the FDIC. *See* SAC ¶ 29, Ex. D.

6

found that the claim lacked merit under existing law, there was at least a plausible basis for bringing such a claim under California's UCL. Rule 11 is not intended to "chill an attorney's enthusiasm or creativity in pursuing factual or legal theories." Accordingly, although the claim for relief under the UCL was not meritorious, the Court finds that it was supported by a reasonable belief that there was a sound basis in existing law – or an argument for the extension thereof – and a sound basis in fact for the position taken. *See Golden Eagle*, 801 F.2d at 1538.

*Claim for IIED*. The Court denied Defendants' motions to dismiss the First Amended Complaint with regard to the IIED claim. June Order at 13. Plaintiff's attorney therefore would have had no reason to change the pleading of the IIED claim when she filed the SAC. Therefore, the Court finds that the refiling of the IIED claim did not violate Rule 11(b).

**3. Sanctions**

Rule 11(c), entitled "Sanctions," provides that:

> (1) In General. If, after notice and a reasonable opportunity to respond, the court determines that Rule 11(b) has been violated, the court may impose an appropriate sanction . . . .
>
> (2) Motion for Sanctions. A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b). The motion must be served under Rule 5, but it must not be filed or be presented to the court if the challenged paper, claim, defense, contention, or denial is withdrawn or appropriately corrected within 21 days after service or within another time the court sets. If warranted, the court may award to the prevailing party the reasonable expenses, including attorney's fees, incurred for the motion.
> . . . .
>
> (4) Nature of a Sanction. A sanction imposed under this rule must be limited to what suffices to deter repetition of the conduct or comparable conduct by others similarly situated. The sanction may include nonmonetary directives; an order to pay a penalty into court; or, if imposed on motion and warranted for effective deterrence, an order directing payment to the movant of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

Fed. R. Civ. P. 11(c).

"Rule 11 is not designed as a fee-shifting provision or to compensate the opposing party. Its primary purpose is to deter sanctionable conduct." *Truesdell v. S. California Permanente Med. Group*, 209 F.R.D. 169, 175 (C.D. Cal. 2002). Given the focus on deterrence, "if a monetary sanction is imposed, it should ordinarily be paid into court as a

7

1 penalty." Fed. R. Civ. P. 11, advisory committee notes, 1993 Amendments. In addition,
2 "The court has available a variety of possible sanctions to impose for violations, such as
3 striking the offending paper; issuing an admonition, reprimand, or censure; requiring
4 participation in seminars or other educational programs; ordering a fine payable to the court .
5 . . ." *Id.*

6       The Court is disheartened by counsel's failure in this case, even in responding to the
7 present motion, to recognize that she has erred. If she had approached her practice with a
8 measure of common sense, Counsel might have reconsidered her position, at the very least
9 with respect to Defendant U.S. Bank, after receiving its every indication that it was an
10 improper defendant here. And on a very basic level, the Court wishes to remind counsel that
11 if an ordinary person cannot understand what she is saying in her pleadings – a neighbor,
12 friend, or family member – then it is very likely that the Court and opposing counsel will not
13 be able to either. The kind of garbled pleading that counsel has three times submitted to this
14 Court imposes a burden that all involved would like to avoid in the future.

15       The serious nature of the violations notwithstanding, there is no evidence that counsel
16 acted in bad faith or with improper intentions. The Court believes she acted to vigorously
17 prosecute the interests of her client. Therefore, in light of all of the facts and circumstances
18 of this case, the Court finds that the most effective deterrent is for Ms. Rodriguez to educate
19 herself on the substantive law of foreclosure and on the fundamental qualities of legal writing
20 and complaint drafting. *Cf., e.g., Balthazar v. Atl. City Med. Ctr.*, 279 F. Supp. 2d 574, 595
21 (D.N.J. 2003) *aff'd*, 137 F. App'x 482 (3d Cir. 2005) (imposing non-monetary sanction of
22 legal education courses).

23       Accordingly, the Court hereby orders counsel, Patricia Rodriguez, to attend a
24 minimum of twenty (20) hours of MCLE-accredited legal education courses, apart from any
25 compliance hours regularly required by the California Bar Association. These hours shall
26 include a minimum of eight hours in complaint-drafting or other legal writing, eight hours
27 addressing the substantive law of foreclosure, if indeed it is an area in which Ms. Rodriguez
28 wishes to continue practicing, and two hours of legal ethics training. If Ms. Rodriguez

8

decides that she will cease practicing in the area of foreclosure, she shall complete the substantive hours in another field in which she intends to practice. At least half of the total hours shall be participatory, within the California Bar's definition of that word. The hours must be completed within nine months. Ms. Rodriguez shall submit documentation to the Court of her compliance with this Order on or before **September 1, 2013.**

**IT IS SO ORDERED.**

Dated: 12/3/12

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT